# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Daryl Fryer, | ) |
| | ) |
|     Plaintiff, | ) |
| | )   Case No. 14 C 9199 |
|     v. | ) |
| | )   Judge Joan Humphrey Lefkow |
| Dr. Ledvora and Ms. Humphries, | ) |
| | ) |
|     Defendants. | ) |

## OPINION AND ORDER

Plaintiff Daryl Fryer, who is no longer in custody, contends that he received constitutionally inadequate medical care for an alleged spider bite when he was detained at the Cook County Jail. He filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983, and the Court allowed him to proceed with a deliberate indifference claim against Dr. Ledvora (an attending physician at Cermak Hospital) and Ms. Humphries (who is identified as both a nurse and a medical technician). Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Defendants' motion (Dkt. 41), memorandum (Dkt. 43), Local Rule 56.1 statement (Dkt. 42), and Local Rule 56.2 "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" (Dkt. 44), Fryer's response (Dkt. 51), and Defendants' reply (Dkt. 54) are before the Court. For the following reasons, the Court grants Defendants' motion for summary judgment in its entirety.

## NORTHERN DISTRICT OF ILLINOIS LOCAL RULE 56.1

Local Rule 56.1 sets out a procedure for presenting facts that are germane to a party's request for summary judgment pursuant to Fed. R. Civ. P. 56. Specifically, Local Rule 56.1(a)(3) requires the moving party to submit "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of

law." *Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014). Each paragraph of the movant's statement of facts must include "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." LR 56.1(a). The opposing party must file a response to each numbered paragraph in the moving party's statement, "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(B). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." LR 56.1(b)(3)(C). The nonmoving party may also present a separate statement of additional facts "consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(C). "[I]f additional material facts are submitted by the opposing party . . ., the moving party may submit a concise reply in the form prescribed in that section for a response." LR 56.1(a).

Because Fryer is proceeding *pro se*, Defendants served him with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Northern District of Illinois Local Rule 56.2. The notice explained how to respond to Defendant's summary judgment motion and Rule 56.1 Statement and cautioned Fryer that the Court would deem Defendants' factual contentions admitted if he failed to follow the procedures delineated in Local Rule 56.1.

Consistent with the Local Rules, Defendants filed a Local Rule 56.1(a)(3) Statement of Material Facts with their summary judgment motion and "Notice to Pro Se Litigant Opposing Motion for Summary Judgment." Defendants' Statement of Material Facts includes a summary of Fryer's version of events that is drawn from Fryer's deposition in this case, Dkt. 42-2 ("Pl.

Dep."). In response, Fryer filed a memorandum that lists four alleged factual disputes and attaches a document entitled "Orders" that appears to be a list of medical orders and test results from the Cook County Jail. He thus did not respond to Defendants' Local Rule 56.1 statement. Although courts construe *pro se* pleadings liberally, *see Thomas v. Williams*, 822 F.3d 378, 385 (7th Cir. 2016), a plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (holding that "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("even *pro se* litigants must follow procedural rules"). Because Fryer has failed to respond properly to Defendant's Rule 56.1 Statement of Undisputed Material Facts, the Court accepts Defendant's "uncontroverted version of the facts to the extent that it is supported by evidence in the record." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). Notwithstanding Fryer's admissions, the Court has interpreted his filings generously consistent with his *pro se* status and will construe his submissions, as well as the record evidence (which includes his deposition in this case), in the light most favorable to him, to the extent that he has either pointed to evidence in the record or could properly testify himself about the matters asserted. *Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013); Fed. R. Evid. 602. With these standards in mind, the Court turns to the relevant facts.

## BACKGROUND

### I.    The Parties

From May 9, 2014, until August 13, 2015, Plaintiff Daryl Fryer was a pretrial detainee at the Cook County Jail, where he was housed in Division Nine. (Dkt. 42 ("Defs.' L.R. 56.1") at ¶ 1.) On July 12, 2014, Fryer sought medical attention because he believed he had been bitten by

3

a spider. (*Id.*) In the amended complaint (Dkt. 9), Fryer alleges a deliberate indifference claim against Dr. Ledvora and medical staffer Humphries.

Dr. Ledvora, an Attending Physician VI in the Medical/Surgical Group at Cermak Hospital, was assigned to Division Nine at Cook County Jail at the relevant time. (Defs.' L.R. 56.1 at ¶ 4.) Dr. Ledvora was responsible for evaluating and treating detainees who submitted Health Services requests, as well as addressing emergency medical situations in Division Nine. (*Id.*) Dr. Ledvora treated minor injuries and ailments in Division Nine's infirmary, and referred more serious issues to Cermak Hospital, which is located on the Cook County Jail campus. (*Id.*; Dkt. 42-5 ("Ledvora Decl.") at ¶ 2.) Medical staffer Humphries was responsible for distributing medication to detainees on Fryer's tier on July 12, 2014. (Defs.' L.R. 56.1 at ¶ 5.) Fryer's only interaction with Humphries was on July 12, 2014. (*Id.*)

## II.     Events From July 12, 2014, through July 16, 2014

While detained at the Jail, Fryer received prescription medication for acne vulgaris, a condition that caused him to break out with pimples, blackheads, and whiteheads. (*Id.* at ¶ 9.) He also received prescription medication for eczema on his legs, arms, and back. (*Id.*; Pl. Dep. at 62:23-63:5.) On July 12, 2014, Fryer noticed a raised area, similar to an "acne bump or something of that nature" on his chest. (*Id.* at ¶ 8; Pl. Dep. at 30:5-31:18.) He believed that the bump was caused by a spider bite. (Defs.' L.R. 56.1 at ¶ 1, Pl. Dep. at 30:5-11; 31:19-32:8.) Because he observed two marks on the bump that looked like a bite and the surrounding skin was swollen and painful if anything "brushed past it," he decided to seek medical attention. (*Id.* at ¶¶ 1, 10.)

According to Fryer, he showed the bump to Officer Watt (the tier officer), who thought the bump was a spider bite that might be infected. (*Id.* at ¶ 11.) Thus, Officer Watt asked

4

Humphries (who was distributing medication on the tier that day) to visit Fryer. (*Id*.) Humphries did so and advised Fryer that she would arrange a visit to the infirmary after she distributed all of her medication because (according to Fryer), she agreed that the bump might be an infected spider bite. (*Id*. at ¶ 12.)

Fryer was not called to the infirmary on July 12, 2014, as promised. (*Id*. at ¶ 13.) Thus, the following morning Fryer asked Officer Woods (that morning's tier officer), if he knew why the prior day's infirmary visit did not occur. (*Id*. at ¶ 14.) Officer Woods investigated by calling down to the infirmary and discovered that the infirmary's records indicated that Fryer had been seen on July 12, 2014. (*Id*. at ¶ 15.) Based on this information, he told Fryer to complete a Health Service Request form. (*Id*. at ¶ 16.)

Fryer completed the form on July 13, 2014. (*Id*.) When he was not called to the infirmary on July 14, 2014, he submitted another form. (*Id*. at ¶ 17.) Around this time, Fryer noticed that a raised portion of the bump had turned green. (*Id*. at ¶ 18.) At some point prior to July 15, 2014, the bump opened, causing fluid to leak onto his chest. (*Id*. at ¶ 18.) Fryer described the leaking area as "just painful" because it was an "open wound." (Pl. Dep. at 34:12-16.) On July 15, 2014, Dr. Ledvora saw Fryer in the Division Nine Infirmary. (*Id*. at ¶ 19.) During his deposition, Fryer testified that Dr. Ledvora told him that it looked like "something" had bitten him, but did not specify what it may have been. (*Id*. at ¶ 20.) Dr. Ledvora's notes indicate that Fryer described the affected area as a boil, but do not specifically state whether Dr. Ledvora had diagnosed the skin issue as a boil or cyst or whether he had concluded that the area was infected.[1] (*Id*. at ¶ 20; Ledvora Decl. at ¶¶ 4, 8.)

---

[1] A boil is a type of skin abscess "caused by staphylococcal infection, which involve a hair follicle and surrounding tissue." *See* http://www.merckmanuals.com/professional/dermatologic-disorders/bacterial-skin-infections/furuncles-and-carbuncles (last visited Dec. 22, 2016). In

5

Dr. Ledvora entered a wound care order requiring Fryer to be provided with warm compresses twice daily, a dressing to cover the open area, and regular dressing changes. (*Id*. at ¶ 21.) He also prescribed sulfamethoxazole-trimethoprim (an antibiotic commonly known as Bactrim) to treat the affected area, as well as athlete's foot and toenail fungus, given Fryer's complaints about these conditions during the same visit. (*Id*. at ¶ 22.) In addition, Dr. Ledvora prescribed acetaminophen for any "minor pains [Fryer] might experience as a result of these conditions." (*Id*.; Ledvora Decl. at ¶ 4.) Finally, Dr. Ledvora's notes indicate that Fryer's "main complaint" during the July 15, 2014 visit was acne vulgaris. (Defs.' L.R. 56.1 at ¶ 22.) Thus, he changed Fryer's acne treatment from clindamycin swabs to tablets. (*Id*.)

Fryer does not dispute that he complained about his acne during the July 15, 2014 visit, but asserts that the main reason for the appointment was to evaluate and treat what he described as a spider bite. (Pl.'s Resp. at ¶ 4.) In addition, because he received antibiotics, Fryer believes that the pustule caused by the alleged spider bite was infected. (Dkt. 51, "Pl.'s Resp.," at ¶ 2.)

At the conclusion of Fryer's appointment with Dr. Ledvora on July 15, 2014, he was given the medication and supplies (gauze and tape) prescribed by Dr. Ledvora. (Defs.' L.R. 56.1 at ¶ 23; Pl. Dep. at 41:13-4243:6.) Fryer received the wound care prescribed by Dr. Ledvora for "probably a day or two" or "somewhere around two days" after his appointment. (Defs.' L.R. 56.1 at ¶ 24; Pl. Dep. at 43:20-24; 44:14-16.) Although he did not receive wound care for the full ten days ordered by Dr. Ledvora, he did not complain or request additional wound care because he could wear a shirt without discomfort once he received a dressing and the pain, swelling, and

---

contrast, a cyst is a lump on the skin that is filled with a substance composed of skin secretions that may require treatment if it becomes bursts and then becomes inflamed or infected. *See* http://www.merckmanuals.com/home/skin-disorders/noncancerous-skin-growths/cutaneous-cysts (last visited Dec. 22. 2016).

leakage associated with the skin issue stopped "probably about the 16th." (Defs.' L.R. 56.1 at ¶ 24; Pl. Dep. at 44:7-19; 45:4-9.)

Fryer believed he was supposed to be called to the Infirmary on July 29, 2014, for a follow-up appointment with Dr. Ledvora. (Defs.' L.R. 56.1 at ¶ 25.) While Defendants assert that Cermak's records do not reflect that Fryer had another appointment on this date, Fryer notes that a print-out of his medical orders while at the Jail ends with the notation, " Follow Up to Primary Care, Priority, 07/29/14 10:00:00 RSR Follow Up." (Pl.'s Resp. at Ex. A.) Fryer, however, saw Dr. Ledvora on August 19, 2014. (Defs.' L.R. 56.1 at ¶ 26.) Dr. Ledvora's treatment notes indicated that the medications provided during the prior visit had had been efficacious and that Fryer had no further complaints. (*Id.*)

When Fryer was still in custody, he did not submit a Health Service Request form to schedule another doctor's appointment after the August 19, 2014 appointment with Dr. Ledvora. (Pl. Dep. at 60:12-61:6.) Fryer is no longer in custody. He currently has what he describes as a "scar" or "scab" where the fluid-filled sac had been. (Defs.' L.R. 56.1 at ¶ 27.) He testified that "[i]f you actually touch it, [it] still feels like it's hard, like something may still be in there." (Pl. Dep. at 59:20-24.) Since the August 19th appointment with Dr. Ledvora, Fryer has not asked another healthcare provider to examine the scar/scab on his chest. (Defs.' L.R. 56.1 at ¶ 27.) Any vestiges of the pustule do not currently cause Fryer to experience "symptoms" or "anything troublesome." (*Id*. at ¶ 28; Pl. Dep. at 61:7-14.) The area is "healed" and is not discolored, as it is the "color of [Fryer's] skin." (Pl. Dep. at 67:7-17.) As Fryer explained at his deposition, further medical care is unnecessary as the scar/scab "hasn't really been a problem for [him]." (*Id*. at 72:12-16.) Overall, he experienced symptoms for "probably a week from the time—from the time the bite bust." (Pl. Dep. at 61:12-16.)

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor," *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772-73 (7th Cir. 2012).

## ANALYSIS

The Court allowed Fryer to proceed on a deliberate indifference claim against Dr. Ledvora and medical staffer Humphries. The "same legal standards" govern "deliberate indifference claims brought under either the Eighth or Fourteenth Amendment" by prisoners or pretrial detainees, respectively. *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010). "A prison official may be found in violation of an inmate's Eighth Amendment right to be free from cruel and unusual punishment if she acts (or fails to act) with 'deliberate indifference to [the inmate's] serious medical needs.'" *Conley v. Birch*, 796 F.3d 742, 746 (7th Cir. 2015) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *see also Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016)

(en banc). Deliberate indifference claims contain both an objective and a subjective component: the inmate must have an objectively serious medical condition and the defendant must be subjectively aware of and consciously disregard the inmate's serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Defendants contend that they are entitled to summary judgment because even if a spider bite did, in fact, cause the pustule on Fryer's chest, Fryer did not have a serious medical condition. They also argue that in any event, Fryer cannot prevail because their interactions with him fail to demonstrate that they were deliberately indifferent. For the reasons discussed below, even assuming, for present purposes, that a spider bit Fryer and thereby caused a pustule to form, he has not pointed to evidence sufficient to survive summary judgment as to either element.

I. **Serious Medical Condition—Objective Element**

A serious medical condition is one that a physician has diagnosed as mandating treatment or one that is so obvious that even a lay person would know that a doctor's attention was needed.'" *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005)). A condition also may be objectively serious if a "failure to treat it could result in further significant injury or the unnecessary and wanton infliction of pain." *Hayes*, 546 F.3d at 522 (quotation marks and citation omitted).

In certain circumstances, an infected skin wound can rise to the level of an objectively serious medical condition. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (a layperson would recognize that a "purulent draining infection" caused by an infected cyst that was accompanied by extreme pain and high fevers is a sufficiently serious medical condition); *Myrick v. Anglin*, 496 F. App'x 670, 674 (7th Cir. 2012) (an inmate's "claim of 'excruciating pain' from his skin infections, including [resistant staph] infections, presented a sufficiently

serious condition to support an Eighth Amendment claim"); *Oliver v. Stadnicki*, No. 14 C 9149, 2015 WL 4266411, at *3 (N.D. Ill. July 10, 2015) (athlete's foot that produced open, leaking sores that did not respond to antibiotics "lends some support to his contention that his condition was more than a simple case of foot fungus").

Nevertheless, "[a] prison's medical staff that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention—does not by its refusal violate the Constitution." *Gutierrez,* 111 F.3d at 1372 (internal quotations omitted). Thus, "[c]ourts have been reluctant to hold that a spider bite is a serious medical need." *Hubbard v. Denmark*, No. 1:13-CV-498-KS-MTP, 2014 WL 4384328, at *4 (S.D. Miss. Sept. 3, 2014) (collecting cases); *Davis v. Gusman*, No. CIV.A. 11-2731-SS, 2012 WL 3150047, at *3 (E.D. La. Aug. 2, 2012) ("a routine spider bite does not constitute a 'serious medical need'").

This remains the case even when, as here, where the bitten area becomes infected if the infection resolves when treated. *See Roberts v. Bailey*, No. 13 C 5245, 2015 WL 5332237, at *3 (N.D. Ill. Sept. 14, 2015) (an infected spider bite "similar in appearance to a pimple . . . is not, in and of itself, an objectively serious medical condition," if the plaintiff fails to identify evidence indicating that the infection poses a significant health risk). For example, in *Jellis v. Hulick,* the Seventh Circuit affirmed the dismissal of a deliberate indifference claim based on care provided to an inmate following a spider bite. 422 Fed. App'x. 548 (7th Cir. 2011). The inmate in *Jellis* alleged that he told a guard that a spider had bitten him, that he was allergic to spider bites, and that the bitten area had become swollen overnight. *Id*. at 549-50. The guard refused to take the inmate for immediate medical care because the prison was on lockdown and he did not believe that the inmate's condition warranted emergency treatment. *Id*. at 549. After the swelling

worsened overnight, the inmate saw a doctor who prescribed antibiotics. *Id*. The Seventh Circuit held that a "two-centimeter, day-old [spider] bite," as described by the plaintiff, "does not compare to those [injuries] that this court has found would be obvious to a layperson." *Id*. at 550.

*Jellis* is consistent with other precedent holding that without other repercussions, an uncomfortable skin issue that responds to treatment is not an objectively serious medical need. *See Robinson v. Milwaukee Secure Det. Facility*, No. 15-C-263, 2016 WL 3620770, at *2 (E.D. Wis. June 29, 2016) (granting defendants' motion for summary judgment because plaintiff's itchy bedbug bites that were relieved by hydrocortisone cream were not a serious medical condition); *Smith v. Schwartz,* 2011 WL 2115831, at *3 (S.D. Ill. May 26, 2011) ("Smith's allegations that he suffered chronic itching, athlete's foot, chafing, peeling skin, and a painful, infected rash on his buttocks due to an inability to shower and clean his cell while Pinckneyville was locked down do not show a serious medical condition.").

Fryer does not contest that during the July 15, 2014 appointment with Dr. Ledvora, he complained about the blistered area on his chest associated with the alleged spider bite, as well as his acne, athlete's foot, and toenail fungus. Dr. Ledvora prescribed Bactrim to treat Fryer's now-open pustule and foot issues, plus a dressing and ten days of warm compresses. The dressing applied during the appointment alleviated the discomfort caused by Fryer's shirt touching his chest, and shortly thereafter ("probably about the 16th," according to Fryer, Pl. Dep. at 45:4-9), the pain, swelling, and leakage associated with the skin issue stopped. Fryer did not receive wound care for the full ten days ordered by Dr. Ledvora, but he did not complain or request additional wound care because his symptoms had resolved. He currently has what he describes as a "scar" or "scab" on his chest but has not sought further medical attention because

the area has "healed" and is not causing "symptoms" or "anything troublesome." (Pl. Dep. at 61:7-14.)

Fryer has not pointed to any evidence suggesting that his short-lived putatively infected pustule posed a significant risk to his health. Regardless of the source of the skin condition (a spider bite, acne vulgaris, eczema, or some other condition) and whether it was a cyst or a boil, "[n]ot all medical conditions are sufficiently serious to implicate the Eighth Amendment." *Reed v. McBride,* 178 F.3d 849, 853 (7th Cir. 1999). At most, Fryer experienced discomfort when his shirt touched the affected area of his chest. No evidence indicates that the skin issue significantly affected his daily activities or caused him to suffer "chronic and substantial pain." *See Gutierrez*, 111 F.3d at 1373. Similarly, Fryer testified at his deposition that he experienced symptoms due to his skin condition for "probably a week from the time—from the time the bite bust" (Pl. Dep. at 61:12-16) and that the application of gauze and a prescription antibiotic caused the pain, swelling, and leakage associated with the skin issue to cease in "about [a day]" ( Pl. Dep. at 45:4-9).

Conditions that might be "life threatening" or pose "a risk of needless pain or lingering disability" rise to the level of a serious medical need. *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991). Fryer has not identified any evidence suggesting that his pain was debilitating, and nothing in the record suggests that a pustule that resolves promptly following treatment with antibiotics and does not cause any ongoing health issues is a significant health risk. *See Perez v. Hardy*, No. 13 C 5635, 2015 WL 5081355, at *7 (N.D. Ill. Aug. 27, 2015) (quoting *Samuels v. Jackson,* 1999 WL 92617, at *1, *3 (S.D.N.Y. Feb. 22, 1999) (pustules and other skin issues that caused "intense itching resulting in eczema" did not qualify as a "serious medical need")). Similarly, even construing the record in the light most favorable to Fryer, at best he had an

infected spider bite or other type of pustule on his chest, three days passed between his request for care and his appointment with Dr. Ledvora, and one additional day passed until his symptoms resolved. Given this, his condition did not have constitutional magnitude. *See Jellis*, 422 Fed. App'x. at 549-50; *Roberts*, 2015 WL 5332237, at *3. Defendants are entitled to summary judgment based on the objective element.

## II.   Deliberate Indifference—Subjective Element

In the interests of completeness, the Court finds that even if Fryer's spider bite/pustule did, in fact, constitute a "serious medical need," he still cannot survive summary judgment because he has not pointed to evidence that supports an inference that Defendants were deliberately indifferent.

"Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (internal citations omitted). Instead, deliberate indifference is comparable to criminal recklessness. *Farmer*, 511 U.S. at 837. Neither medical malpractice nor a mere disagreement with a doctor's medical judgment constitute deliberate indifference. *See Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012); *see also King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) ("Negligence—even gross negligence—is insufficient to meet this standard").

With respect to healthcare worker Humphries, construed generously, Fryer has asserted that on July 12, 2014, she stated that she would make an appointment for him at an unspecified time when she finished distributing medication. Fryer learned the following day that for unknown reasons, Cermak's records indicated that Fryer had already been seen, and Fryer was able to schedule an appointment on July 15, 2014. Intentionally delaying medical care for a serious condition can amount to deliberate indifference. *McGowan v. Hulick*, 612 F.3d 636, 640-

41 (7th Cir. 2010) (citations omitted). But "[o]nly deliberate indifference or worse in the face of a serious medical need will do." *Id*. (citations omitted). Fryer's response to the summary judgment motion does not mention Humphries, and no evidence supports an inference that Humphries was malevolent as opposed to, at best, merely negligent with respect to arranging a visit to the infirmary. Indeed, no evidence indicates that Humphries was, in fact, responsible for the error in Cermak's records and the resulting one to two-day delay in receiving medical care addressing Fryer's pustule.

Moreover, "delays are common in the prison setting with limited resources, and whether the length of a delay is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016) (en banc). Where, as here, an inmate relies upon a delay in treatment to show an objectively serious medical condition, he must identify evidence indicating that the delay caused his condition to worsen or unnecessarily prolonged pain. *See id*. Fryer decided to seek medical attention when the skin around his pustule became swollen and was painful if anything "brushed past it." (Defs.' L.R. 56.1 at ¶¶ 1, 10.) Nothing in the record suggests that Fryer's condition appreciably worsened as he waited for his appointment.

"'[D]eliberate indifference' is a synonym for 'intentional or reckless conduct,' and 'reckless' describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred." *Enge v. Obaisi*, No. 13 C 5154, 2016 WL 1359368, at *2 (N.D. Ill. Apr. 6, 2016) (quoting *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999)). The Court cannot draw this inference based on the summary judgment record here. *See Hood v. Johns*, No. 5:11-CT-3072-FL, 2012 WL 3839987, at *4 (E.D.N.C. Sept. 5, 2012) (granting summary judgment against a plaintiff who asserted that defendant prison guards had promised him treatment for a brown

recluse spider bite because in the absence of any evidence suggesting that the guards "purposely denied or delayed his treatment," a one-week delay in obtaining treatment "at most, amounts to negligence, which does not state a constitutional claim"). Accordingly, Humphries is entitled to summary judgment on the alternative ground that she was not deliberately indifferent.

Turning to Dr. Ledvora, Fryer appears to be arguing deliberate indifference based on his belief that his pustule was infected and that he was bitten by a spider. Fryer also takes issue with the fact that he was called for a follow-up appointment on August 19, 2014, rather than July 29, 2014 (the follow-up appointment date in Cermak's progress notes). Regardless of whether the pustule was infected or caused by a spider bite or some other source, it is undisputed that Fryer saw Dr. Ledvora on July 15, 2014, and the pain, swelling, and leakage associated with the pustule stopped "probably about the 16th." (Pl. Dep. at 45:4-9.) When Fryer saw Dr. Ledvora on August 19, 2014, Dr. Ledvora noted that the treatment prescribed during the prior visit had had been effective and that Fryer had no further complaints.

Nothing suggests that Dr. Ledvora's Bactrim prescription—which worked within 24 hours—departed from accepted medical judgment, practice, or standards. *See Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012); *see also Vaughn v. Daviess Cty. Det. Ctr.*, No. 4:16-CV-P61-JHM, 2016 WL 5843935, at *6 (W.D. Ky. Oct. 4, 2016) (holding that an inmate whose spider bite did not respond to an antibiotic and became "severely swollen" failed to establish deliberate indifference because she received a different antibiotic eleven days later); *Jackson v. Benjamin*, No. CIV.A. 10-0304-WS-M, 2011 WL 1789992, at *7 (S.D. Ala. Apr. 27, 2011), *report and recommendation adopted,* No. CIV.A. 10-0304-WS-M, 2011 WL 1776040 (S.D. Ala. May 10, 2011) (concluding that a nurse who cleaned plaintiff's spider bite wound, gave him aspirin, and ordered daily bandage changes was not deliberately indifferent);

15

*Newson v. Fenoglio*, No. 1:00-CV-1622-SEB-VSS, 2006 WL 1876960, at *2 (S.D. Ind. July 5, 2006) (granting prison doctors' motion for summary judgment based on the totality of medical care they provided for a reported spider bite when the record did not show that their medical judgments about plaintiff's condition and treatment substantially departed from accepted professional judgment, practice, and standards). Dr. Ledvora is, therefore, also entitled to summary judgment on the alternative ground that he was not deliberately indifferent.

Accordingly, Defendants' motion for summary judgment is granted in its entirety. If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court. *See* Fed. R. App. P. 24(a)(1).

Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Plaintiff wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon.

*See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

## CONCLUSION

For the above reasons, Defendants' motion for summary judgment [41] is granted in its entirety. The Clerk is directed to enter final judgment accordingly.

Date: January 4, 2017

_____
U.S. District Judge Joan H. Lefkow